IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 12-4462

---

EMANON SHANNON,
Appellant

v.

JEFFREY N. DILLMAN, et al.,
Appellees

---

**MOTION TO EXPAND CERTIFICATE OF APPEALABILITY**

---

1500 Liberty Center          LISA B. FREELAND
1001 Liberty Avenue          Federal Public Defender
Pittsburgh, PA  15222
(412) 644-6565               Attorney for Appellant,
                                  Emanon Shannon

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

EMANON SHANNON,                    )
      Appellant          )
                    )
      v.                    )    No. 12-4462
                    )
                    )
JEFFREY N. DILLMAN, et.al.,        )
      Appellees          )

## MOTION TO EXPAND CERTIFICATE OF APPEALABILITY

AND NOW comes the Appellant, Emanon Shannon, by and through his counsel, Federal Public Defender Lisa B. Freeland, and files this Motion to Expand Certificate of Appealability.  In support thereof, counsel states:

## I.   PROCEDURAL HISTORY

1.   On March 26, 2005, Emanon Shannon was charged by criminal complaint in York County, Pennsylvania, with Disorderly Conduct, Receiving Stolen Property, Possession with Intent to Distribute a Controlled Substance, Possessing an Instrument of Crime, and Possession of a Small Amount of Marijuana.  See Exhibit A (Police Criminal Complaint, York County) at 2-3.  The Receiving Stolen Property charge was based on the fact Mr. Shannon was in possession of a PNC bank card that listed the name Juan Matos, and a long gold necklace with a Jesus emblem that belonged to Mr. Matos.  See

1

Exhibit A at 3.    It was later discovered that the necklace and bank card had been stolen from Matos.    Exhibit B (Harrisburg Bureau of Police Affidavit of Probable Cause) at 2.    These items were found after Mr. Shannon was arrested after police observed him in a physical altercation with a man named Randall Gillis at the Motel 6 at 200 Commerce Drive in New Cumberland, Pennsylvania.    See Exhibit A at 4.    Mr. Gillis had in his possession a gold & diamond earring that also was taken from Mr. Matos.    See Exhibit B at 2.

2.    On August 10, 2005, Mr. Shannon pleaded guilty to all of the charges in the complaint under an agreement that he would receive a sentence of three to six years imprisonment.    See Exhibit C (August 10, 2005, Transcript of Pretrial Conference/Guilty Plea).

3.    On April 1, 2005, while the charges in York County were still pending, Mr. Shannon and Mr. Gillis were charged in Dauphin County with robbery, aggravated assault, kidnaping, three counts of criminal conspiracy.[1]    See November 19, 2012, Memorandum Opinion at 1, District Court Docket Entry No. 17.    The Affidavit of Probable Cause filed in connection with the Dauphin County charges at issue here alleged the following:    On March 26, 2005, as Juan Matos and

---

[1] Mr. Shannon also was charged with two firearms violations.    See November 19, 2012, Memorandum Opinion, District Court Docket Entry No. 17 at 1.

Shamar McCollum were getting out of Matos' car in front of Ryan's Bar, they were rushed by three to four suspects who were wearing masks. As McCollum took off running, the suspects grabbed Matos and forced him back into his car. Matos heard gunshots, but because the suspects pulled his hat down over his head, he could not see.[2] The suspects got in the car and drove off with Matos. They took his gold chain with a Jesus emblem on it, two gold earrings with diamond crosses, gold teeth and approximately $400.00 in cash. Matos was forced into the trunk of the car, and the suspects drove to the above-referenced Motel 6 on Commerce Drive in New Cumberland. The suspect forced Matos into a motel room, removed his clothing, tied his ankles together with shoe strings and demanded that he contact friends and gather more money. See Exhibit B at 1.

The probable cause affidavit further alleged that: Matos heard the suspects discussing the fact that they saw police outside. A cab arrived sometime thereafter and the suspects left the room. Id. Matos tried to make a phone call, but two of the suspects returned to the room. Id. They threatened him and put duct tape on his ankles and hands and forced him onto the floor between the beds. Id. at 1-2. The two suspects left again and Matos waited

---

[2] Mr. McCollum went to the Harrisburg Hospital with a gunshot wound in his shoulder. See Exhibit B at 2.

for a while and then was able to break free and leave the room. Id. at 2.  When he walked outside, he encountered police.  Matos learned that Emanon Shannon and Randall Gillis were arrested for fighting in front of the motel, and following searches incident to their arrests, both men were found in possession of his property. Id.  Mr. Shannon also was found to be in possession of a receipt for the room where Matos was held.  Id.  When questioned, Randall Gillis told police that Mr. Shannon, not he, shot Shamar McCollum as he ran from the scene.  Id.

4.    Shannon and Gillis were jointly tried in Dauphin County in March 2006.  During the trial Detective David Lau testified at length about various statements made by Gillis, who did not testify. See District Court Docket Entry Nos. 9-4 & 9-6, Transcript of Jury Trial Proceedings at 1, 221-258.  In every account, Gillis pointed the finger at Shannon and denied his own involvement in the offenses charged.[3]  Id. at 221-232.

---

[3] Mr. Shannon's name was redacted from Gillis' statements, and replaced with "the other person" or "another person."  Trial counsel neither objected to the admission of the redacted statement nor moved for a severance when advised the statement would be introduced.  At the evidentiary hearing held in connection with Mr. Shannon's PCRA, counsel testified that she agreed to the redaction.  Transcript of March 19, 2009, PCRA Hearing at 18, District Court Docket Entry No. 9-10.

5.    Gillis was acquitted of all charges and Shannon was convicted on all except the two criminal conspiracy counts, which were based on a conspiracy between he and Gillis.  See District Court Docket Entry Nos. 9-7 & 9-8, Transcript of Jury Trial Proceedings at 358-361.  Mr. Shannon was thereafter sentenced to an aggregate term of 45-90 years imprisonment.  November 19, 2012, Memorandum Opinion at 3, District Court Docket Entry No. 17.

6.    Ari D. Weitzman, Esquire, was appointed to represent Mr. Shannon on appeal.  He filed an Anders brief and moved to withdraw.[4] Id. at 4.

7.    On August 21, 2007, the Superior Court issued an opinion affirming the conviction and sentence and finding the issues raised frivolous.  Id.

8.    The Superior Court described the offense as follows:

The record reflects the following facts and procedural history. On the morning of March 26, 2005, in the City of Harrisburg, Pennsylvania, Appellant, carrying a firearm, approached the car of Juan Matos. Appellant threatened to rob Juan Matos and Shamar McCollum who were near Matos' car. N.T., 3/8/2006, at 50-51. After McCollum refused to cooperate, Appellant and McCollum began to

---

[4] In the brief, he argued, however, that the conviction was not supported by sufficient evidence and was against the weight of the evidence.  November 19, 2012, Memorandum Opinion at 4, District Court Docket Entry No. 17.  He also argued that the trial court abused its discretion at sentencing.  Id.

fight. During the altercation, Appellant struck McCollum with the gun and then shot him in the arm. Id. at 52-56. After being shot, McCollum fled the scene and was taken to the hospital by some friends. Id. at 57.

As McCollum fled the scene, Appellant and several other men forced Matos into the vehicle at gunpoint. Id. at 89. Matos felt his hat pulled over his face as the car began to drive away. The captors searched Matos for money and other valuables. Id. at 90-91. After the men drove for a couple of minutes, they forced Matos into the trunk of the car at gunpoint. Id. at 95. **The men then drove to a motel in Fairview Township, York County. They led Matos into a motel room where they held him captive. Id. at 97-103.**

**At some point while Matos was held captive, police officer Tyson Baker pulled into the motel parking lot. Id. at 168. Officer Baker observed a suspicious looking car, later identified as Matos' car, with its windshield wipers on. No keys were in the ignition. Id. at 168-69. Because the car appeared as it if might be a stolen vehicle, Officer Baker stayed in the area to watch the exit of the parking lot. Id. at 168-170. As he was waiting, Officer Baker saw a cab leave the parking lot and stop a short distance from the motel. Appellant and another man exited the cab because they were fighting. Id. at 172. Officer Baker responded to the fight, placed the two men under arrest, and proceeded to issue the men their Miranda [v. Arizona, 384 U.S. 436 (1966)] rights. Id. at 170-173. During the search incident to arrest, the police found a receipt for a motel room in Appellant's name, jewelry, and a PNC bank card bearing the name of Juan Matos. Id. at 173-175.**

**Sometime after Appellant was arrested, Matos escaped the motel room. When he left, he still had some residual duct tape on his clothes. Id. at 176. Matos encountered the police as he left the motel room and told them what had happened, without naming his abductors. The police went to the room where Matos had been held captive. This was the same room designated on the receipt found on Appellant. The police also found duct tape on the floor and Matos' blue boxer shorts in the trash can. Id. at 176-179.**

Id. at 1-2 (emphasis added).

9.    Shortly thereafter, on November 16, 2007, Mr. Shannon filed a pro se PCRA petition, and the court appointed William Shreve, Esquire, to represent him.   Id. at 3.   Mr. Shreve filed a Turner/Finley no merit letter, and the trial court granted his motion to withdraw and notified Mr. Shannon of its intent to dismiss his PCRA petition.   Id.   Mr. Shannon lodged several additional pro se filings, and on December 31, 2008, the court appointed Jeffrey B. Engle, Esquire, to represent Shannon.   Id.

10.  Despite the courts acceptance of Mr. Shreve's Turner/Finley representations, it held an evidentiary hearing to address Mr. Shannon's claims of ineffective assistance of counsel – among them claims that (1) counsel should have filed a motion to dismiss the charges under 18 Pa.C.S.A. § 110 and the double jeopardy clause because the charges arose from the same criminal episode for which he was convicted in York County; (2) counsel failed to seek a severance; and (3) counsel failed to object to the introduction of Randall Gillis' statements through Detective Lau.

Following the hearing, the court denied the PCRA in a one page Order.   See June 3, 2009, Order of Court, District Court Docket Entry No. 9-11 at 2.

7

11.  A timely appeal was filed by Mr. Engle, who presented the following issues:

> 1. Whether prior PCRA counsel, William Shreve, was ineffective for failing to raise the issue of trial counsel's ineffectiveness for failing to object or request a mistrial due to Detective Lau reading [Appellant's] co-defendant's statement which incriminated [Appellant]?

> 2. Whether prior PCRA counsel was ineffective for failing to address trial counsel's ineffectiveness in failing to request a cautionary instruction due to the fact that evidence was introduced that the Commonwealth witnesses had pending charges?

> 3. Whether prior PCRA counsel was ineffective for failing to address trial counsel's ineffectiveness for failure to inform the trial court that a potential conflict existed with her representation of [Appellant]; namely, that her husband, Adam Klein, had previously prosecuted [Appellant] in a revocation hearing?

> 4. Whether Dauphin County Court of Common Pleas erred by accepting prior PCRA counsel's 'no merit' letter as it did not comply with the Finley standard because prior PCRA counsel only addressed the *pro se* issues and did not address his own independent review of the record?

November 19, 2012, Memorandum Opinion at 4, District Court Docket Entry No. 17.

12.  The PCRA court filed an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), and addressed only the above issues, which were included in Mr. Shannon's Statement of Matters Complained of on Appeal.  See June 15, 2009, Memorandum Opinion, District Court Docket Entry No. 9-11 at 11-22.  With respect to Bruton issue, the court found that "Gillis's statements were

8

entered into evidence to show Mr. Gillis's involvement with the crimes, and not for the purpose of showing the Defendant's involvement." Id. at 6. The court continued: "In fact, when Co-Defendant Gillis's statement was entered into evidence, the Defendant's name was never even mentioned as being involved in the commission of the crimes. Therefore, Co-Defendant Gillis's statement conformed to the precepts of Bruton [v. United States, 391 U.S. 123 (1988)]".[5] Id.

13.    The Superior affirmed the denial Of Mr. Shannon's PCRA without discussion, finding that the PCRA court's opinion "adequately disposes of the underlying merits of the ineffectiveness issues . . . ." November 19, 2012, Memorandum Opinion at 4, District Court Docket Entry No. 17.

14.    Mr. Shannon filed a timely pro se petition for writ of habeas corpus, raising the following grounds for relief:

> 1. Whether appellate counsel, Weitzman, was ineffective for failing to assert that trial counsel was ineffective because of his "failure to object to a second prosecution in Dauphin County on the basis that the Dauphin County charges arose from the same criminal episode for which

---

[5] The court also "deem[ed] Crawford[v. Washington] to be inapplicable in the case at hand. Co-Defendant Gillis's statement was never directed against the Defendant, hence the Defendant's right to confront his accuser was never violated." June 15, 2009, Memorandum Opinion at 6, District Court Docket Entry No. 9-11.

petitioner had once pleaded guilty to in York County, a violation of 18 Pa.C.S.A. 110;

2. Whether appellate counsel, Weitzman, was ineffective for failing to assert that trial counsel was ineffective because of his "failure to object or preserve a Bruton argument in regards to admittance of the statement by a non-testifying co-defendant during an uncounseled extra judicial interrogation implicating the petitioner when said extra judicial statement was presented to the jury through the affiant, without cautionary instruction;

3. Whether appellate counsel, Weitzman, was ineffective for failing to assert that trial counsel was ineffective because of his failure to move for severance based on introduction of "a Liily [sic] extrajudicial statement from Petitioner's non-testifying co-defendant during their joint trials which only served to unduly prejudice the petitioner;

4. Whether PCRA counsel was ineffective for failing to raise the issue of trial counsel's "failure to inform the trial court that a potential conflict existed with her representation of petitioner; namely, that her husband, Adam Klein, had previously prosecuted petitioner, and

5. Whether the PCRA court erred by accepting PCRA counsel's no merit letter "as it did not comply with the Finley standard, because prior PCRA counsel onlt [sic] addressed the pro se issues.

Id. at 5-6.

15. The district court denied the petition, as well as a certificate of appealability ("COA"). With respect to grounds one and three, relevant here, the district court found the issues raised were procedurally defaulted by Mr. Engle's failure to assert them at any juncture in the appeal from the denial of Mr. Shannon's PCRA petition. Id.at 7-8. The district court rejected Mr. Shannon's argument, under Martinez v. Ryan, 132 S.Ct. 1309 (2012),

10

that he could overcome the procedural default by establishing that Mr. Engle was ineffective in failing to present the issues on appeal. Id. at 10.

16.   Specifically, the court found that Martinez applies (1) where counsel is not appointed at the "initial-review collateral proceeding"; and (2) where counsel appointed at the "initial-review collateral proceeding," at which the claims should have been raised, is constitutionally ineffective. Id. at 9.   It further found that, because counsel was appointed to represent Mr. Shannon in connection with his PCRA, and pursued the claims at issue, Martinez did not apply. Id.   In other words, the court found that an "initial-review collateral proceeding" is limited to only the trial court stage of the proceeding.

17.   With   respect   to   Mr.   Shannon's   Bruton-related ineffectiveness claim, the Court found that "to the extent that Shannon   attempts   to   establish   ineffectiveness   based   on   the correlation of the testimony of Officer Baker and Detective Lau, the claim is unexhausted and procedurally defaulted." Id. at 9. The court's default analysis mirrored that discussed above as to claims one and three.

18.   The district court did find Mr. Shannon's claim that appellate counsel "was ineffective for failing assert that trial

counsel was ineffective because of [her] 'failure to object or preserve a <u>Bruton</u> argument in regards to admittance of the statement by a non-testifying co-defendant . . . without cautionary instruction,'" exhausted and ripe for review. <u>Id</u>. at 8, 10-11 (citations omitted).

19. Although the district court recited the standards set forth in 28 U.S.C. §§ 2254(d)(1) (unreasonable application of clearly established federal law) and (d)(2) (unreasonable determination of the facts in light of the evidence presented), it analyzed Shannon's claim only under §§ 2254(d)(2) and (e)(1):

> In <u>Bruton</u>, the Court held that the admission of an out of court statement of a defendant who implicated his codefendants, and who did not testify at trial, violated the co-defendant's Sixth Amendment confrontation rights. <u>Bruton</u>, 391 U.S. 123. Therefore, in order to avoid a <u>Bruton</u> violation, a prosecutor trying a multi-defendant case must redact the confession "to eliminate not only the [codefendant's] name, but any reference to his or her existence." <u>Richardson v. March [sic]</u>, 481 U.S. 200, 211 (1987). The PCRA court noted that during the PCRA hearing "Attorney Klein clearly testified that she requested this Court to redact certain portions of the statement to conform with the tenets sets [sic] forth in <u>Bruton v. U.S.</u>, 391 U.S. 123 (1988). (Notes of Testimony of the PCRA Hearing, March 19, 2009 at 18-19, 26)." (Id.) Further, "Co-Defendant Gillis's statements were entered into evidence to show Mr. Gillis's involvement with the crimes and not for the purpose of showing the Defendant's involvement. (Notes of Testimony, hereinafter "N.T." at 319). In fact, when Co-Defendant Gillis's statement was entered into evidence, the Defendant's name was never even mentioned as being involved in the commission of the crimes. (N.T. at 227-233). Therefore, Co-Defendant

12

Gillis's statement conformed to the precepts of <u>Bruton</u>."
(Doc. 9-11, at 16.) . . .

In light of the above, the PCRA court concluded that the
ineffective assistance claim lacked merit. (Doc. 9-11,
at 16.) Because Shannon has not demonstrated by "clear
and convincing evidence," that the state court's
determination of the facts, which are presumed correct,
was unreasonable in light of the record, his claim fails.

<u>Id</u>. at 18-19.

20.  Following the denial of his habeas petition, Mr. Shannon

filed a notice of appeal.  <u>See</u> District Court Docket Entry No. 18.

The case was docketed in this Court on December 19, 2012, and on

June 12, 2013, the Court granted, in part, Mr. Shannon's request

for a COA and appointed undersigned counsel to represent him in

this appeal.  The COA provides the following:

Shannon's application for a certificate of appealability
is granted in part and denied in part. <u>See</u> 28 U.S.C.
§ 2253(c)(2). We grant his application with regard to the
claim that trial counsel was ineffective for failing to
object on the basis of, or to otherwise preserve, a <u>Bruton</u>
<u>v. United States</u>, 391 U.S. 123 (1988), argument
pertaining to the admission, at trial, of the redacted
statement of a non-testifying co-defendant. Jurists of
reason could debate the District Court's assessment of
this constitutional claim. <u>See Miller-El v. Cockrell</u>, 537
U.S. 322, 327 (2003). <u>The certificate of appealability</u>
<u>extends to both the substantive and the underlying</u>
<u>procedural aspects of this claim and its disposition in</u>
<u>the District Court</u>. Shannon's application is otherwise
denied.

June 12, 2013, Order (emphasis added).

13

## II.  <u>ARGUMENT</u>

Mr. Shannon seeks a limited expansion of the COA to include the <u>procedural aspect</u> of his § 110 and severance-related ineffectiveness claims (issues one and three set forth above in ¶ 14).  The district court's procedural ruling on these two claims is the same as the court's ruling on the <u>Bruton</u> claim, and the Court's above-quoted order encompasses the same.  By granting a COA on the procedural issue, the Court necessarily has found that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, (2000).

Because the Court has already found that jurists of reason would find the district court's procedural ruling debatable, and because Mr. Shannon does not seek substantive review of his constitutional claims, arguably this Court could expand the COA without a further showing on his part.  Were he seeking a substantive review of those claims in this Court, he would need to demonstrate "a substantial showing of the denial of a constitutional right."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003) (citing 28 U.S.C. § 2253(c)(2)).  Under that standard, the Court would need only determine further that "jurists of reason could disagree with the district court's resolution of [the]

14

constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[6]  Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 478).  Here, Mr. Shannon can make that showing with respect to both additional claims.

### A.  Ineffective Assistance of Counsel

A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective counsel."  United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992) (quoting, Strickland v. Washington, 466 U.S. 668, 687 (1984)).  As the Supreme Court stated in Strickland, "access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the prosecution' to which they are entitled."  Strickland, 466 U.S. at 685.  Indeed, "[c]ounsel . . . has a duty to bring to bear such skill and knowledge

---

[6] Mr. Shannon seeks only this Court's review of the procedural aspect of the claims discussed herein because, even if the Court grants this motion and expands the COA and renders a favorable ruling on the procedural issue, the case necessarily would be remanded to the district court for consideration of the merits of the issues in the first instance.  If Mr. Shannon prevails on the procedural issue the Court plans to address under the COA as granted, but does not prevail on the merits of his Bruton claim, it will establish that the district court also erroneously found the claims discussed herein to be procedurally defaulted, and Mr. Shannon should be afforded an opportunity to have the claims addressed on the merits as he would have had the district court reached not concluded they were defaulted.

as will render the trial a reliable adversarial testing process."
Id. at 688.

In order to prevail on a claim of ineffective assistance of
counsel, a defendant "must prove both incompetence and prejudice."
Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing,
Strickland, 466 U.S. at 688).   While counsel's competence is
presumed, a defendant may rebut this presumption by "proving that
his attorney's representation was unreasonable under prevailing
professional norms and that the challenged action[s were] not [ ]
sound strategy." Kimmelman, 477 U.S. at 384 (citing, Strickland,
466 U.S. at 688-89).   The reasonableness of counsel's performance
is to be evaluated from counsel's perspective at the time of the
alleged error and in light of all the circumstances.   Id.   The
court must then determine whether, "in light of all the
circumstances, the identified acts or omissions were outside the
wide range of professionally competent assistance."   Id.

With respect to prejudice, "Strickland v. Washington does not
require certainty or even a preponderance of the evidence that the
outcome would have been different with effective assistance of
counsel; it requires only a reasonable probability that that is the
case." Day, 969 F.2d at 45 n.8.   It is a relatively low standard,
given that it is not necessary to even prove it is "more likely

16

than not" that the outcome would be different. <u>Boyd v. Waymart</u>, 579 F.3d 330, 354 (3d Cir. 2009).

### 1. <u>Severance</u>

In granting the COA on Mr. Shannon's claim that counsel was ineffective "for failing to object on the basis of, or to otherwise preserve, a <u>Bruton v. United States</u>, 391 U.S. 123 (1988), argument pertaining to the admission, at trial, of the redacted statement of a non-testifying co-defendant," the Court has already determined that jurists of reason could debate whether counsel was ineffective for failing to object to the admission of Randall Gillis's redacted statement at a joint trial. <u>See</u> June 12, 2013, Certificate of Appealability. It necessarily follows that the COA standard is met with respect to Mr. Shannon's claim that counsel was ineffective for failing to move for severance and avoid the joint trial altogether. The Court's decision to grant the COA on the <u>Bruton</u> ineffectiveness issue, establishes that jurists of reason would debate both (1) whether counsel unreasonably failed to avoid the joint trial altogether given the redaction approved by the trial court; and (2) whether the admission of Gillis' redacted statement at a joint trial prejudiced Mr. Shannon.

Moreover, because Mr. Gillis did not implicate himself in any of the crimes with which he was charged – indeed, his statements

17

were purely accusatory, shifting blame onto Mr. Shannon – if the statements were properly redacted to remove any reference to Mr. Shannon, as the statements were in <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987), they would have been of little to no use to the Commonwealth.  The primary focus of the statements were the actions of the "other person."  As a result, there were only two real options: a joint trial with a statement that violated Mr. Shannon's confrontation rights, or separate trials.

Given the circumstances here, counsel not only unreasonably failed to object to the redaction under <u>Bruton</u>, she also unreasonably failed to recognize that severance was the only possible solution because the approved redaction failed to protect Mr. Shannon's rights under the confrontation clause.  In other words, if the redaction employed here did not conform to <u>Bruton</u>, severance was warranted.  <u>See Eley v. Erickson</u>, 712 F.3d 837, 858-861 (3d Cir. 2013) (finding that state court unreasonably applied <u>Bruton</u> in upholding redaction of non-testifying co-defendant's statement and finding severance was not warranted);[7] <u>see also</u>

---

[7] The Supreme Court has explained that, although circuit precedent cannot "be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced, . . . an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point is clearly established by Supreme Court precedent

18

Bruton, 391 U.S. at 137 (severance is required if the statement is appropriately redacted).

This case also raises the proto-typical instance of "mutually antagonistic" defenses.  Although the Supreme Court has held that "[m]utually antagonistic defenses are not prejudicial per se[,]" and that a severance is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," Zafiro v. United States, 506 U.S. 534, 538, 539 (1993), that standard is met here.  The Court cautioned, that "[s]uch a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant."  Id. at 539.  One example where joinder might present a risk of prejudice is where "[e]vidence [ ] probative of a defendant's guilt [is] technically admissible only against a codefendant.  Id. (citing Bruton, 391 U.S. 123).

Here, Gillis' statements were antagonistic in that they were purely accusatory and shifted all blame for the crimes charged onto Emanon Shannon.  The statements also were admissible only against

---

. . . ."  Marshall v. Rodgers, 133 S.Ct. 1446, 1450-51 (2013) (internal citations omitted).

19

Gillis, and would not have been admissible at a separate trial against Mr. Shannon.    Under the circumstances known by trial counsel at the point when a motion for severance should have been made, as well as the fact that the statements were not susceptible to proper redaction, trial counsel unreasonably failed to seek a severance.

There should be little doubt that joint trial resulted in prejudice to Mr. Shannon.    Given the improper redaction and absence of a contemporaneous limiting instruction as required under Delli Paoli v. United States, 352 U.S. 232 (1957),[8] the jury could not help but consider Mr. Gillis' statement against Mr. Shannon. Moreover, Gillis pointed the finger at Shannon and was acquitted of all charges – even though Gillis, too, was identified by Juan Matos as having been one of the three men who assaulted and kidnapped him, and was found in possession of Mr. Matos' property upon arrest.    See District Court Docket Entry No. 9-4, Transcript of Jury Trial Proceedings at 87.    It appears from a review of the record that the likely reason the jury disbelieved Matos was that

---

[8] In Delli Paoli, the Supreme Court "defined 'an appropriate instruction' as one that is made 'at the time of the admission' and that 'makes it clear that the evidence is limited as against the declarant only.'"    Eley, 712 F.3d at 859 n. 19 (quoting Delli Paoli, 352 U.S. at 238)

he generally lacked credibility.  He was caught making conflicting statements, and was facing substantial jail time as a result of pending federal drug charges of his own.  Id. at 80-162.  If the jury was willing to ignore Matos' testimony implicating Mr. Gillis, it follows that there is a reasonable probability that a jury in a separate trial – where Mr. Gillis' finger-pointing statement would have been inadmissible and, therefore, could not have been used against Mr. Shannon – also would have ignored Matos's testimony. And, although Shamar McCollum also identified Mr. Shannon as one of the men who robbed and kidnapped Mr. Matos, Mr. McCollum was cousins with Mr. Gillis and his bias and motive to protect Mr. Gillis was evident from his testimony.  See District Court Docket Entry No. 9-4, Transcript of Jury Trial Proceedings at 19-52, 58-59.  In any event, in granting the COA, this Court already has determined that jurists of reason could disagree about whether the admission of Mr. Gillis' statement had a "substantial and injurious effect" on Mr. Shannon.  See Fry v. Pliler, 551 U.S. 112, 121-22(2007).  To obtain a severance, Mr. Shannon would have been required to show that he would be prejudiced by a joint trial. The question of whether reasonable jurists could disagree about whether Mr. Shannon was also prejudiced by counsel's failure to seek a

severance, therefore, is subsumed by the question upon which the Court granted a COA.

Mr. Shannon's claim that prior counsel were ineffective for failing to seek a severance and/or pursue the severance issue on appeal is as worthy of further consideration as the ineffectiveness claim based on counsel's failure to object to Randall Gillis' statement under Bruton, and the COA should be expanded to include it.

### 2.   Section 110 (Compulsory Joinder)

Mr. Shannon also seeks to expand the COA to include his claim that counsel was ineffective for failing to move to dismiss the charges under 18 Pa.C.S.A. § 110, Pennsylvania's compulsory joinder statute.  In order to prevail on the claim, he would be required to show that counsel unreasonably failed to file the motion and that, had it been filed, there is a reasonable probability that it would have been granted and some or all of the charges against him dismissed.

Section 110 provides in pertinent part:

**§ 110. When prosecution barred by former prosecution for different offense**

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or

is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:

(i) any offense of which the defendant could have been convicted on the first prosecution;

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense; or

(iii) the same conduct, unless:

(A) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(B) the second offense was not consummated when the former trial began.

18 Pa.C.S. § 110.

The Pennsylvania Supreme Court has outlined four requirements which, if met, preclude a subsequent prosecution due to a former prosecution for a different offense: (1) the former prosecution must have resulted in an acquittal or a conviction; (2) the current prosecution is based upon the same criminal conduct or arose from

23

the same criminal episode as the former prosecution; (3) the prosecutor was aware of the instant charges before the commencement of the trial on the former charges; and (4) the current offense occurred within the same judicial district as the former prosecution. Commonwealth v. Fithian, 961 A.2d. 66, 72 (Pa. 2008). In Fithian, the court considered the "occurred within the same judicial district" requirement and, after a thorough review of the legislative history and the purposes of the compulsory joinder statute, held that "the General Assembly intended to preclude from the reach of the compulsory joinder statute those current offenses that occurred wholly outside of the geographic boundaries of the judicial district in which the former prosecution was brought, even though part of a single criminal episode." Fithian, 961 A.2d at 77 (emphasis added). The court also specifically found that "the compulsory joinder statute extends to those offenses which occurred in more than one judicial district, when one of those judicial districts was where the former prosecution was brought." Id. at 200.

Under Fithian's construction, Mr. Shannon satisfies the "occurred within the same judicial district" requirement because his offenses of conviction "occurred in more than one judicial district," and "one of those judicial districts was where the former

prosecution was brought." Id. His former prosecution was brought in York County, where elements of the kidnapping, robbery and criminal conspiracy offenses all occurred.[9] None "occurred wholly outside of the geographic boundaries of the judicial district in which the former prosecution was brought." Id. at 199.

Shannon also satisfies the other requirements. Initially, the York County prosecution resulted in a conviction, and the York County prosecutor was aware of the instant (Dauphin County) charges before Mr. Shannon pleaded guilty in York County. Not only were officers from both jurisdictions communicating on the evening Shannon and Gillis were arrested (and thereafter to ensure the preservation of evidence), see Exhibit D at 6, 7, 8, 12, 13, the Dauphin County charges were mentioned during the York County plea proceedings – before Mr. Shannon entered a plea of guilty. See Exhibit C at 4-5. In addition, at the hearing on Mr. Shannon's PCRA petition, Judge Clark, in explaining that he did not believe there was merit to the § 110 issue, stated that "the district attorney in York County and the district attorney in Dauphin County were very careful not to cross that bridge, so to speak, no pun

---

[9] Not only was Mr. Matos held in York County, Mr. Matos testified that it was in York County that his PNC Bank card was taken and his P.I.N. obtained. See District Court Docket Entry No. 9-5, Transcript of Jury Trial Proceedings at 99-100.

intended, because they go between the Susquehanna River, east and west shore, and purposely avoided that issue." Transcript of March 19, 2009, PCRA Hearing at 63, District Court Docket Entry No. 9-10.

Judge Clark also apparently did not believe counsel was ineffective for failing to file a § 110 motion because he did not think the only remaining requirement – that the prosecution which led to the conviction underlying these proceedings was based upon the same criminal conduct or arose from the same criminal episode as the former prosecution – could be met. In Judge Clark's view, "the crimes that [Shannon was] charged with in Dauphin County were complete when they happened in Dauphin County, so that there wasn't a transfer over of some crime or crimes of which you were charged with in York County and thereby be in violation of § 110." Id.

Initially, the test for determining whether one prosecution arose from "same criminal episode" as another does not hinge on whether a crime is "complete" in one jurisdiction. Judge Clark just got it wrong.[10]

---

[10] Even if he had been correct, the kidnapping which began in Dauphin County clearly continued into York County where Juan Matos was held and Mr. Shannon and Mr. Gillis were arrested. Similarly, based on witness testimony, the crime of receiving stolen property, which applies when someone receives, retains or disposes of stolen property, 18 Pa.C.S. § 3925(a), also began in Dauphin County and

As the Pennsylvania Supreme Court explained in Commonwealth v. Reid, 77 A.3d 579 (Pa. 2013), the "same episodes" requirement, also referred to as the "logical relationship" prong of § 110(1)(ii), requires courts "to look at the 'temporal' and 'logical' relationship between the charges to determine whether they arose from a 'single criminal episode.'" Reid, 77 A.3d at 582. In determining whether there is a logical relationship, "'the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses."[11] Id. (quoting Commonwealth v. Hude, 458 A.2d 177, 181 (Pa. 1983). However, "'[t]he mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require "an absolute identity of factual backgrounds."'" Id. (quoting Paul Jerome Richey, Comment, *Commonwealth v. Campana and Section 110 of the Crimes Code: Fraternal Twins,* 35 U. Pitt. L.Rev. 275, 286–87 (1973)).

To establish a logical relationship, there must be "substantial duplication of issue of law or fact." Id. at 583.

---

extended into York County.

[11] The Dauphin County and York County offenses were indisputably related temporally; the focus here is on the logical relationship aspect of the test.

The Reid court explained that, in Hude, there was a substantial duplication because both cases "rested solely on the credibility of a single witness[,]" id. (quoting Commonwealth v. Bracalielly, 658 A.2d 755, 762 (Pa. 1995), and that in Commonwealth v. Anthony, 717 A.2d 1015 (Pa. 1998), the court found a substantial duplication of issues of fact or law "because 'a high percentage of the testimony from the first trial had to be repeated in the second trial.'" Id. (citing Anthony, 717 A.2d at 1019). Conversely, in Commonwealth v. Spotz, 756 A.2d 1139 (Pa. 2000), the court found there was no substantial duplication because each instance of possession and delivery of drugs "would require the testimony of completely different police officers and expert witnesses as well as separate chains of custody." Id. at 584 (citing Spotz, 756 A.2d at 1159).

Whether there is a substantial duplication of issues of fact or law "depends ultimately on how and what the Commonwealth must prove in the subsequent prosecution." Id. at 585. In Reid, the court found there was substantial duplication and, therefore, no logical relationship between the offenses – in large part because there appear to be different 'victims' and 'major movers' in each case. Id. at 586 (quoting Commonwealth v. Reid, 35 A.3d 773, 779 (Pa. Super. 2010)). The court compared the "different evidence"

28

required to establish the offenses alleged in each case, and found it was not substantially duplicative.  Id.

Here, one need only review the Superior Court's recitation of the factual background of the Dauphin County offenses to glean the logical relationship between the offenses charged in Dauphin Court to those charged in York County.  See supra, ¶ 8.  More importantly, however, a review of the evidence presented reveals that two of the three main witnesses – Juan Matos and Fairview Township (York County) Police Officer Tyson Baker – were also the two witnesses who testified at Mr. Shannon's preliminary hearing in York County.[12] See Exhibit D at 15.  Both men testified about events which took place in both Dauphin and York counties.  See District Court Docket Entry Nos. 9-4, 9-5 & 9-6, Transcript of Jury Trial Proceedings at 80-194.  One of the remaining four witnesses – Jay Smith, a Newberry Township (York County) police officer – also testified about events

---

[12] Because Mr. Shannon entered a guilty plea in York County, the Commonwealth did not have to present the testimony of Mr. Matos and Officer Baker at trial.  It is unimaginable that, had the case proceeded to trial, both men would not have been needed.  The Receipt of Stolen Property charge involved two pieces of property that belonged to Juan Matos – one that he testified was taken from him in Dauphin County (the gold Jesus necklace) and one that he testified was taken from in the York County (PNC bank card).  Matos' testimony about events which took place in both locations would have been required to establish that the items were stolen, and Officer Baker's testimony would have been required with respect to all of the York County charges.

which took place wholly within York County.  See District Court Docket Entry No. 9-4 & 9-6, Transcript of Jury Trial Proceedings at 2, 195-200.  Together, these witnesses testimony made up 120 pages of the 199 pages (60 percent) of witness testimony offered by the Commonwealth.  See id. at 80-200.  In addition, 15 of the 17 exhibits (88 percent) offered by the Commonwealth at trial were either evidence recovered by, or photographs taken by, the York County arresting officers.  See District Court Docket Entry No. 9-4, Transcript of Jury Trial Proceedings at 3.

Simply stated, the investigations of the offenses brought in York and Dauphin counties were not only temporally and logically connected, they were intertwined.  The evidence upon which the prosecution relied to convict Mr. Shannon in Dauphin County was presented, provided and created by York County officials and substantially duplicative of what was presented at the preliminary hearing in York County (and would have presented at trial had a trial been held).  And both prosecutions relied largely on the testimony of two witnesses – Officer Baker and Juan Matos.

Based on the above, counsel unreasonably failed to file a motion to dismiss under § 110.  Because such a motion was meritorious and, if filed, should have been granted, Mr. Shannon was prejudiced by counsel's failure to pursue the issue.  At the

very least, jurists of reason would debate the same. The COA should be expanded to include a review of the district court's determination that Mr. Shannon's § 110-related ineffective assistance of counsel claim was procedurally defaulted, and that Martinez does apply because PCRA counsel presented the claim in the PCRA (though not on appeal to the Superior Court). As noted above, this Court already granted a COA on the procedural issue. If the COA is expanded to include the § 110-related ineffective assistance of counsel claim, and Mr. Shannon prevails on the procedural question, the district court will address the merits of the claim if a remand is required.

## III. <u>CONCLUSION</u>

For all of the reasons discussed above, the Court should expand the certificate of appealability to allow review of the district court's procedural default ruling as it pertains to Emanon Shannon's claims that trial counsel was ineffective for failing to move to sever his case from Randal Gillis' and for failing to file a motion to dismiss the charges under § 110. The Court will be addressing the procedural issue under the COA as granted, and insofar as, under AEDPA, Mr. Shannon has only one opportunity to have his Sixth Amendment claims reviewed on the merits by a federal court, this Court should allow expansion to allow that review in

31

the event Mr. Shannon prevails on the procedural default issue but does not prevail on the <u>Bruton</u> claim.

Respectfully submitted,

**_/s/ Lisa B. Freeland_**
Lisa B. Freeland
Federal Public Defender
Counsel of Record

Attorney for Appellant,
Emanon Shannon

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the following is a filing user and will

be served electronically by the Notice of Docketing Activity:

        Jennifer Gettle, Esquire
        Dauphin County Office of District Attorney
        Front & Market Street
        Harrisburg, PA 17101

and a hard copy mailed same date to:

        Emanon Shannon
        #FE-6319
        SCI Houtzdale
        P.O. Box 1000
        Houtzdale, PA  16698-1000

        **/s/ Lisa B. Freeland**
        Lisa B. Freeland
        Federal Public Defender

Dated: June 27, 2014